**NOT FOR PUBLICATION**

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| In Re:<br><br>CRAIG CARTON,<br><br>                    Debtor. | Case No.: 20-19781-VFP<br><br>Chapter: 7 |
| ERIC R. PERKINS, Chapter 7 Trustee,<br><br>                    Plaintiff,<br><br>v.<br><br>ERIC BAMBERGER,<br><br>                    Defendant. | Adv. Proc. No.: 22-1272-VFP<br><br>Judge: Andrew B. Altenburg, Jr.<br><br>Hearing Date: November 14, 2023 |

**OPINION**

This matter is before the court on the motion by defendant Eric Bamberger (the "Defendant") to dismiss the Amended Complaint for failure to state a claim by the Plaintiff, Eric R. Perkins, the Chapter 7 Trustee (the "Trustee"), under Federal Rule of Civil Procedure 12(b)(6). The court is not inclined to either dismiss the Amended Complaint or convert the Motion to Dismiss to a motion for summary judgment at this stage of the proceedings as the Trustee has made plausible claims and there are fact sensitive issues that are not ripe for resolution at this time.

**JURISDICTION AND VENUE**

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY/BACKGROUND

On August 21, 2020, the Debtor, Craig Carton, filed a voluntary chapter 7 petition. On August 19, 2022, the Trustee filed an adversary complaint (the "Complaint"), Doc. No 1, against the Defendant seeking to avoid certain transfers, disallow claims, and impose a constructive trust. The Trustee initially had difficulty locating the Defendant. Eventually, on March 3, 2023, the Trustee served an alias summons and the Complaint on the Defendant via certified and regular mail. Thereafter the Defendant filed a motion to dismiss pursuant to Rules 12(b)(5) and 4(m) and Rule 12(b)(6), Doc. No. 6, arguing he was not timely served with the Complaint and that the Complaint failed to state a claim.

On May 16, 2023, following oral argument on the motion to dismiss the Complaint, the Court, by oral opinion, partially granted and partially denied the Defendant's motion to dismiss. Doc. No. 18. Consistent with its oral opinion, by order dated May 18, 2023 (the "May 18 Order"), Doc. No. 14, the court: (1) denied the motion to dismiss for failure to make timely service; (2) denied the motion as to Count I; (3) dismissed Counts II, III, and V without prejudice to file an amended complaint; and (3) dismissed Count IV conditionally subject to automatic reinstatement should the Defendant file a proof of claim. In his oral opinion, Judge Papalia ruled that the Trustee had stated a claim for relief for the actual fraud count, arising under 11 U.S.C. § 544 and 28 U.S.C. § 3304(b)(1)(A) (the "Actual Fraud Count"). As to the constructive fraud counts, arising under 11 U.S.C. § 544 and 28 U.S.C. §§ 3304(a)(1) & (b)(1)(B) (the "Constructive Fraud Counts"), Judge Papalia dismissed, with leave to amend, concluding that the Complaint contained mere bare conclusions regarding equivalent value and did not satisfy the heightened pleading standard as to the Constructive Fraud Counts. Doc. No. 18 at 53–54. Judge Papalia also granted the Trustee's Cross-motion to Extend the Time for Service of the Adversary Complaint.[1] Doc. No. 14 at ¶4.

In addition, during his hearing, Judge Papalia addressed the Defendant's argument that the Trustee could not recover the 2016 payments because the IRS's claim did not arise until the close of the 2016 tax year. Prior to announcing his decision, during a colloquy with counsel, Judge Papalia invited the Defendant to provide further briefing on the issue after issuance of his oral opinion. *Id.* at 25–26 ("And if you want to brief it again, you can brief it again and you know, wait until I decide this motion and we'll see how it goes."). Judge Papalia concluded that the IRS's claim arose when the transaction occurred, not when the obligation came due. Doc. No. 18 at 55–56. Judge Papalia noted that under the Third Circuit's broad definition of claim, the right to payment arose in 2016 when the IRS became a creditor under the Bankruptcy Code with a claim or right to payment for the taxes that were the result of activities in 2016.

Thereafter, the Trustee timely filed an Amended Complaint (the "Amended Complaint"), Doc. No. 17, on June 16, 2023. Consistent with Judge Papalia's ruling, the Amended Complaint does not allege something new or different. Indeed, except for some necessary revisions consistent with Judge Papalia's ruling, the allegations in the Amended Complaint nearly mirror the allegations in original Complaint as to the Actual Fraud Count and the Constructive Fraud Counts. The Trustee is no longer pursuing Counts IV and V of the original Complaint in the Amended Complaint.

---

[1] No appeal or request for reconsideration of this portion of the May 18 Order was made.

In the Actual Fraud Count in the Amended Complaint, the Trustee realleges that the Debtor, pursuant to a Ponzi scheme, made payments directly to the Defendant with actual intent to hinder, delay, and defraud the Debtor's creditors. Amended Complaint at ¶77. The Trustee seeks to avoid all payments made to the Defendant during that time. The Amended Complaint now also notes that the IRS filed a proof of claim in the Debtor's case, Claim No. 16-1, in the amount of $2,001,048.94, Amended Complaint at ¶82.

As to the Constructive Fraud Counts in the Amended Complaint, the Trustee appears to address Judge Papalia's concerns about bare conclusions regarding equivalent value by revising the allegations contained in ¶74, based upon documents provided by the Defendant, and limiting his claim to $654,456.57, which he alleges represents *just* the interest payments made, above and beyond all other dollar for dollar payments made directly to the Defendant by the Debtor. The Trustee realleges that he, standing in the shoes of the IRS, seeks to avoid just those interest payments as fraudulent transfers under 28 U.S.C. § 3304(a)(1) and the Federal Debt Collection Procedure Act. Amended Complaint at ¶¶74, 86, & 87. Specifically, the Trustee seeks to avoid just the interest payments made directly to the Defendant, without the Debtor receiving reasonably equivalent consideration in exchange, while the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction, or that the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due as a result of said transfers. *Id.* at ¶¶74 and 94.

The Defendant filed this Motion to Dismiss the Amended Complaint, arguing that all three counts of the Amended Complaint should be dismissed for failure to state a claim upon which relief may be granted. Doc. No. 22. The Trustee filed an Opposition and the Defendant filed a Reply Memorandum. Doc Nos. 24 and 25.

The parties appeared on the return date of the hearing on the Motion to Dismiss and argued their cases. The record is closed and the matter ripe for disposition.

## MOTION TO DISMISS STANDARDS

A Civil Rule 12(b)(6) motion to dismiss for failure to state a claim is made applicable in an adversary proceeding pursuant to Bankruptcy Rule 7012. Fed. R. Bankr. P. 7012; Fed. R. Civ. P. 12(b)(6). Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may dismiss a complaint for failure to state a claim upon which relief may be granted. *Wells Fargo Equip. Fin., Inc. v. Alario,* No. 10–37591-MBK, 2011 WL 3510865, at *2 (Bankr. D.N.J. Aug. 9, 2011). A motion to dismiss under Civil Rule 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that a plaintiff has failed to set forth "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (ellipses omitted). A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation omitted). The plausibility standard requires that "the plaintiff

plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Accordingly, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations and citations omitted).

Furthermore, Fed. R. Civ. P. 9(b) requires a party alleging actual fraud to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "There is no question that Rule 9(b) applies to adversary proceedings in bankruptcy which include a claim for relief under §§ 544 or 548, whether it is based upon actual or constructive fraud." *In Re Oakwood Homes Corp.*, 325 B.R 696, 698 (Bankr. D. Del. 2005). What is more, "[t]he elements for actual and constructive fraudulent conveyance actions under 28 U.S.C. § 3304(b)(1) are nearly identical to the elements for actual and constructive fraudulent conveyance actions under § 548(a)(1) of the Bankruptcy Code." *In re Health Diagnostic Lab., Inc.*, Nos. 15-32919, 2017 Bankr. LEXIS 2230, at *58 (Bankr. E.D. Va. Aug. 9, 2017). Nevertheless, the pleading standard under Rule 9(b) is relaxed where a bankruptcy trustee is pleading a fraudulent transfer claim. *Oakwood Homes Corp.*, 325 B.R. at 698–99. Moreover, as it relates to constructive fraud, "the great majority of cases hold that since a cause of action based on constructive fraud does not require proof of fraud, the heightened pleading requirements of Rule 9(b) are not applicable." *In re Actrade Financial Techs., Inc.*, 337 B.R. 791, 801 (Bankr. S.D.N.Y. 2005) (citations omitted); *see also In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 735 (Bankr. S.D.N.Y. 2008) ("Rule 9(b) does not apply to claims sounding in constructive fraudulent transfer, and allegations of a constructive fraudulent transfer are subject to less rigorous pleading requirements.") (citations omitted).

At the motion to dismiss stage, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1017 (D. Idaho 2010) (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005)); *see also In re Nebeker*, 646 B.R. 294, 300–01 (Bankr. D. Idaho 2022). When considering a Rule 12(b)(6) motion, the court must accept all the factual allegations contained within the complaint as true. *United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Indeed, all reasonable inferences should be drawn in favor of the plaintiff. *Gary v. Air Group, Inc.*, 397 F.3d 183, 186 (3d Cir. 2005).

As a general matter, a court ruling on a motion to dismiss may not consider matters extraneous to the pleadings and the court is "limited to the facts alleged in the complaint, not those raised for the first time by counsel in its legal memorandum." *Griesenbeck v. Am. Tobacco Co.*, 897 F. Supp. 815, 819 (D.N.J. 1995). However, the Third Circuit, under the incorporation by reference doctrine, has allowed a "document integral to or explicitly relied upon in the complaint" to be considered "without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) and citing *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are

4

based on the document") (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993))). Through the incorporation by reference doctrine:

> [A] defendant may offer a document to be incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). When offered by a defendant, "the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under [FRCP] 12(b)(6)." *Id.* The document must be extensively referred to in the plaintiff's complaint; "the mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citing *Ritchie*, 342 F.3d at 908–09).

*In re Mendenhall*, No. 22-40902-MJH, 2023 WL 5962608, at *3 (Bankr. W.D. Wash. Sept. 13, 2023). Incorporation by reference does not convert a motion to dismiss into a motion for summary judgment. *Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

Here, the parties attached documents to their pleadings that were not attached to the Amended Complaint. The Trustee attached several exhibits to his memo relating to the U.S. Attorney's investigation, prosecution, and sentencing of the Debtor. Doc. No. 24, Exhibits B, C, D, & E. Similarly, the Defendant submitted as Exhibit A to his Motion to Dismiss the Declaration of Benjamin R. Zakarin, which contains Exhibits A through D. Exhibits A and B are the criminal complaint and the SEC complaint filed against the Debtor. The Court has not considered or relied on these exhibits as they are not integral to or explicitly relied upon, nor extensively referred to in the Amended Complaint. "To be integral, a document must be one that by its very existence and the mere information it contains, give rise to the legal rights asserted." *In re Milledge*, 639 B.R. 334, 340 (Bankr. D.S.C. 2022) (citing *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)). The parties' documents here do not rise to that level. Moreover, as set forth below, the court is satisfied with the sufficiency of the facts alleged in the Amended Complaint and therefore, these documents are unnecessary at the motion to dismiss stage as they are not essential to the Trustee's claim. *In re Cedar Funding, Inc.*, 419 B.R. 807, 821 (B.A.P. 9th Cir. 2009) (holding a court may consider extraneous documents so long as they are essential to the plaintiff's claim). Because of this, the court declines to convert this Motion to Dismiss into one for summary judgment. *See Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1424.

Defendant also suggested that the court, at this stage, should consider public records concerning matters involving the Debtor — for example, a settlement document between the Trustee and the Debtor related to dischargeability. While the court may consider matters of public record that bear a significant relationship to the complaint, orders or items appearing in the case record, issues that are incorporated by reference or integral to the claim, and matters subject to judicial notice, *see Pryor v. Natl. Collegiate Athletic Assn.,* 288 F.3d 548, 559–60 (3d Cir.2002), the Defendant has not remotely demonstrated any significant relationship that resolution has on the Trustee's claims here. Certainly, that settlement document cannot be incorporated by reference into the Motion to Dismiss as it is not explicitly relied upon in, or an integral part of, the Amended

Complaint. What is more, while the court may take judicial notice of the settlement document, it "can only do so to establish the existence of that filing, not for the truth of the facts asserted therein." *Burton v. Nationstar Mortg. LLC*, 255 F. Supp. 3d 616, 619 (E.D. Pa. 2015). Even then, judicial notice of matters of public records or court documents does not convert a motion to dismiss into a motion for summary judgment. *In re Equip. Acquisition Res., Inc.*, No. 09 B 39937, 2012 WL 4754764, at *5 (Bankr. N.D. Ill. Sept. 28, 2012) (citing *Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir.1994)).

## TRUSTEE'S ALLEGATIONS

The court accepts, with all reasonable inferences drawn in favor of the Trustee, all of the following factual allegations contained within the Amended Complaint as true:

Defendant is an associate of the Debtor who loaned the Debtor funds with which to gamble, in the hopes of the Defendant receiving a financial return on the loaned funds. Amended Complaint ¶6. The agreement between the Defendant and the Debtor required the Debtor to return the principal plus 10 percent, whether he won or lost while gambling. Amended Complaint at ¶¶48–49. The Debtor made transfers between August 21, 2014, and the petition date in the amount of $6,544,565.74 (the "Six Year Transfers) with 10 percent or $654,456.57 of that amount constituting interest payments as a return on the Defendant's loan (the "Interest Payment Transfers"). Amended Complaint at ¶74; Exhibit A to Amended Complaint.[2]

On November 7, 2018, the Debtor was convicted by a jury on federal fraud charges stemming from a Ponzi scheme wherein the Debtor operated a ticket resale business. Amended Complaint at ¶14. The Debtor would purchase, through an associated entity Tier 1 Tickets, tickets in bulk quantities to live events and then resell the tickets to event patrons at retail. *Id.* at ¶9. Brigade Capital Management financed Tier 1 Tickets' purchase of these tickets in bulk via a $10 million revolving line of credit to which the Debtor and Tier 1 Tickets had access. *Id.* at ¶10. Once these tickets were sold at retail, Tier 1 Tickets would transfer the proceeds of such sales to the Debtor's wholly owned business entity Ticket Jones, LLC. *Id.* at ¶11. Ticket Jones, LLC would then send some of the sale proceeds back to Brigade Capital Management in order to pay down the debt owed by Tier 1 Tickets as a result of that entity's original bulk sale ticket purchase. *Id.* at ¶12. The Debtor and several of his former associates were alleged to have run a Ponzi scheme that defrauded approximately $4.8 million from various investors, including over $3.5 million from Brigade Capital Management, by claiming that the group had access to millions of dollars of face-value live event tickets through nonexistent agreements with concert promoters. *Id.* at ¶13. The Debtor's conviction was the result of him using investor funds earmarked for wholesale ticket purchases to fund his personal gambling activities and other personal expenses. *Id.* at ¶15.

From September 23, 2020, through March 12, 2021, the Trustee conducted four section 341 hearings and requested that the Debtor produce documents related to his pre-petition finances,

---

[2] In May 2023, the Defendant sent the Trustee a spreadsheet documenting each transfer between the Defendant and the Debtor during 2016, along with redacted copies of the Defendant's bank statements from the same period. The Defendant alleges the Trustee has relied upon this information to create Exhibit A. Doc. No 22-1 at 4 n.1.

6

including his gambling winnings and losses and the source of his gambling funds. During the section 341 meetings, the Debtor disclosed that several individuals and entities had invested in his gambling activities by wiring money to either his bank account or directly to casinos. *Id.* at ¶¶45, 47. The Debtor guaranteed a 10 percent return on the funds and that the Debtor kept any winnings above the 10 percent return. *Id.* at ¶48. The Debtor specifically stated he took out personal loans to payback gambling investors in the event he gambled away the funds they provided him. *Id.* at ¶50. As the Trustee alleged in the original Complaint, Complaint at ¶¶51 & 63, the Debtor used newly loaned funds and even new winnings to pay down old gambling debts, forming the basis of a Ponzi scheme, *id.* at ¶51. The Debtor eventually disclosed a list of seven persons and entities, including the Defendant, who funded his gambling in 2016 (the "Gambler Investor List"). *Id.* at ¶¶59, 60. Even though the Debtor borrowed $30 million to gamble, the Debtor has only disclosed $9,109,000.00 in repayments and has failed to disclose any gambling records for the years 2015, 2017, and 2018. *Id.* at ¶¶64, 66.

Between August 21, 2014, and the petition date, the Debtor made transfers directly to Defendant in the minimum amount of $6,544,565.74, with 10 percent or $654,456.57 of that amount constituting interest payments as a return on the Defendant's loans. Amended Complaint at ¶74. The Debtor used newly loaned funds and even new winnings to pay down old gambling debts, forming the basis of a Ponzi scheme. *Id.* at ¶51. The Debtor guaranteed a return on each of the Gambling Investors' investments and paid that return with subsequently loaned funds from other investors willing to lend him money based on the same promise (i.e., that each investor would receive a 10 percent return on their money). This cycle was precipitated by the fact that the Debtor often lost the initial loaned funds gambling, making it necessary for him to use the subsequently loaned funds to pay off the previous loans including the promised 10 percent return. *Id.* at ¶63. Additionally, the Debtor used some of the proceeds from the ticket resale scheme to fund his gambling. *Id.* at ¶65. The Trustee, stepping into the shoes of the IRS, alleges that the payments to the Defendant may be avoided as fraudulent transfers. The IRS filed a proof of claim, Claim No. 16-1, in the amount of $2,001,048.94. *Id.* at ¶82.

## ANALYSIS

### A.    Count I - The Actual Fraud Count

The Trustee seeks to avoid the Six Year Transfers and the Interest Payment Transfers as fraudulent conveyances based on actual fraud pursuant to 28 U.S.C. § 3304(b)(1)(A),[3] which provides, in relevant part:

---

[3] While the Defendant has not challenged the Trustee's right to bring claims under § 3304, the court notes that a trustee can step into the shoes of the IRS as an unsecured creditor and utilize 28 U.S.C. § 3304 of the FDCPA as applicable law under § 544(b)(1) of the Code to avoid fraudulent transfers made in the 6 years prior to the petition date). *In re Musselwhite*, Nos. 20-00928-5-SWH, 2021 WL 4342902, at *11 (Bankr. E.D.N.C. Sep. 23, 2021); *see also In re Gaither*, 595 B.R. 201 (Bankr. D.S.C. 2018) (section 544(b) permits the trustee to step into the shoes of the IRS to bring a § 3304 claim); *In re Pfister*, 2012 WL 1144540, at *5 (Bankr. D.S.C. Apr. 4, 2012), *aff'd*, 749 F.3d 294 (4th Cir. 2014) ("Because Debtor was indebted to the IRS at the time of the Transfer, the Court finds that the Transfer is also constructively fraudulent and avoidable pursuant to § 544(b) and 28 U.S.C.3304(a)(1)").

> (b) Transfers Without Regard to Date of Judgment.—
>
> (1) Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation—
>
> (A) with actual intent to hinder, delay, or defraud a creditor[.]

*Id.* While 28 U.S.C. § 3304(b)(2) identifies certain badges of fraud to consider when determining actual intent under the statute, the Trustee has not alleged any. Instead, the Trustee argues that allegations of a Ponzi scheme[4] give rise to a "Ponzi scheme presumption" that establishes the Debtor's actual intent.

The Ponzi scheme presumption provides that "[t]here is a presumption of actual intent to defraud because 'transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors.'" *In re Geltzer*, 502 B.R. 760, 770 (Bankr. S.D.N.Y. 2013) (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 104 (Bankr. S.D.N.Y. 2011), *leave to appeal denied*, 464 B.R. 578 (S.D.N.Y. 2011)). In order to apply the Ponzi scheme presumption, the transfers must be made in furtherance of the fraud. *Id.* (citing *In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1, 13 (S.D.N.Y. 2007), *aff'd Gredd v. Bear, Stearns Sec. Corp.*, 328 F. App'x 709 (2d Cir. 2009)); *see also In re Bernard L. Madoff Inv. Securities LLC*, 458 B.R. at 104 ("the 'Ponzi scheme presumption' establishes the debtors' fraudulent intent[.] . . . There is a presumption of actual intent to defraud because 'transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors.'"). As explained by one court:

> The "Ponzi scheme presumption" is an exception to the ordinary "badges of fraud" analysis used in fraudulent transfer case because it recognizes "the unique, entirely fraudulent nature of Ponzi schemes." *Ritchie Capital Mgmt., L.L.C. v. Stoebner*, Case No. 12-3038, 2013 U.S. Dist. LEXIS 79636, 2013 WL 2455981 at *2 (D. Minn. June 6, 2013). Where the Ponzi scheme presumption applies, consideration of the badges of fraud has been held to be unnecessary. *Id.*

*In re M & M Mktg., L.L.C.*, Nos. BK09-81458-TJM, 2013 WL 5592909, at *1–2 (Bankr. D. Neb. Oct. 10, 2013).

---

[4] "[I]n a typical Ponzi scheme, (1) the debtor receives funds from investors (which can include parties loaning money to generate a return); (2) investors are promised large returns for their investments; (3) initial investors are actually paid the promised returns, which attracts additional investors; (4) returns to investors are not financed through the success of the underlying business venture, if any, but are taken from principal sums received from newly attracted investments; and (5) the debtor induces investments through an illusion of paying returns to investors from legitimate business activities."

*In re Vaughan Co.*, 477 B.R. 206, 219 (Bankr. D.N.M. 2012).

### 1. The Ponzi Scheme Presumption Is Satisfied

Accepting the well-pleaded allegations in the Amended Complaint as true and viewing them in the light most favorable to the Trustee, the court concludes that the Trustee has sufficiently pled plausible facts and given fair notice of what his claim is and the grounds upon which it rests, allowing the court to draw a reasonable inference that the Defendant is liable. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

The Defendant argues that Count I fails to state a claim to avoid all but the last four 2016 repayments because the Ponzi scheme for which Debtor was convicted did not begin until September 2016. Additionally, the Defendant argues that the Trustee has failed to allege specific facts reflecting that the 2016 repayments were in furtherance of a Ponzi scheme.

However, as noted by the Trustee, the Amended Complaint alleges a two-level Ponzi scheme that is not solely based upon the Debtor's fraud conviction. The Trustee alleges that the first level involved the Debtor receiving funds from the Defendant and using those borrowed funds to finance his gambling activities and pay down old gambling debts while promising a large return (10 percent) on any new gambling (the "Gambling Scheme"). The Trustee alleges that the Defendant was paid those promised returns not from legitimate business activities, but from the Gambling Scheme. The second level of the scheme involved the Debtor's ticket scheme, which was the focus of the DOJ's and SEC's investigation and prosecution (the "Ticket Scheme"). The Trustee alleges the two Ponzi schemes were interconnected because the Debtor used funds derived from both schemes to fund his gambling. Specifically, the Amended Complaint states:

> 50. Indeed, in his HBO documentary film Wild Card: The Downfall of a Radio Loudmouth (the "Documentary"), the Debtor specifically states he took out personal loans to payback gambling investors in the event he gambled away the funds they provided him. See Documentary at 36:50/1:15:58.
>
> 51. This led to a vicious cycle of the Debtor using newly loaned funds and even new winnings to pay down old gambling debts forming the basis of a Ponzi scheme. The Debtor himself confirms this by stating in his Documentary that he borrowed over $30 million specifically for gambling. See Documentary at 37:00/1:15:58.

Amended Complaint at ¶¶50–51. Then, the Amended Complaint further alleges that the Gambler Investor List provided by the Debtor to the Trustee contained amounts the Debtor remitted to the Gambling Investors as repayment for their respective loans and the payment of a 10 percent return. *Id.* at ¶¶60–62. Hence:

> 63. This is further evidence of a Ponzi scheme since the Debtor guaranteed a return on each of the Gambling Investors' investments and paid that return with subsequently loaned funds from other investors willing to lend him money based on the same promise (i.e. that each investor would receive a 10% return on their money). This cycle was precipitated by the fact the Debtor often lost the initial loaned funds gambling making it necessary for him

to use the subsequently loaned funds to pay off the previous loans including the promised 10% return.

*Id.* at ¶63. The Trustee does not have to prove that he will ultimately prevail. *Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1017 (D. Idaho 2010). And here, the Trustee has plausibly alleged and put the Defendant on notice that the Debtor's gambling losses triggered a self-perpetuating cycle in which the Debtor guaranteed a return on each of the Gambling Investors' investments and paid that return with subsequently loaned funds from other investors willing to lend him money based on the same promise. The Trustee has plausibly alleged the existence of a Ponzi scheme and as result, the Ponzi scheme presumption applies. As the Ponzi scheme presumption provides that there is a presumption of actual intent to defraud, and because Exhibit A to the Amended Complaint identifies the transactions and amounts based upon the information provided by the Defendant,[5] Count I survives in this regard even under the Rule 9(b) standard. *See Pergament as Tr. of Est. of Barkany v. Marina Dist. Dev. Co., LLC*, No. 14 CV 2602 (RJD), 2018 WL 5018654, at *12 (E.D.N.Y. Oct. 15, 2018) (the Ponzi scheme presumption satisfies the Rule 9(b) requirements).

The Defendant's argument regarding the scope and or time frame of the Ponzi scheme being limited to post September 2016 activities is without merit. The Trustee has plausibly alleged two separate yet interconnected schemes: the Gambling Scheme and the Ticket Scheme. The Gambling Scheme is the focus of the Trustee's action, while the Ticket Scheme was the focus of the DOJ. The Amended Complaint at ¶65 alleges that the total amount of principal on the gambling funds the Debtor reported as having repaid in 2016 was $9,109,000.00. The Trustee has put the Defendant on notice that the Gambling Scheme encompasses the whole of 2016 and not merely the months that were involved in the Ticket Scheme. At the motion to dismiss stage, the Trustee has sufficiently pled that the Debtor's gambling activities alone are sufficient to support a conclusion that the Ponzi scheme presumption applies to all transactions conducted in 2016. Count I survives in this regard.

### 2. The Six-Year Statute of Limitations Does Not Bar Recovery of Pre-April 22, 2016 Transactions

The Defendant argues that any of the transactions prior to April 22, 2016, are barred by a six-year statute of limitations under 28 U.S.C. §3306(b)(1) because the IRS did not file a proof of claim until April 22, 2022, or because the Complaint was not filed until August 19, 2022. Doc. 22-1 at 21; Doc. 25 at 8 n.1.

---

[5] The Defendant attached the Declaration of Benjamin Zakarin to the Motion to Dismiss the Amended Complaint. Doc. No. 22-2. At ¶6, counsel asserts that based upon the Defendant's bank records he prepared the accounting summary found in ¶8, and then shared the accounting summary with the Trustee. The Defendant contends the court may take judicial notice of the accounting summary because the Trustee relied upon the accounting summary to create Exhibit A to the Amended Complaint. Doc. No. 22-1 at 17–18, citing *Hughes v. UPS*, 639 Fed. Appx. 99, 103 (3d. Cir. 2016) ("[A] 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.' When a plaintiff relies on a document without attaching it to the complaint, the plaintiff nevertheless has notice that the document will be at issue").

The Trustee responds that the statute of limitations is measured by when the Trustee filed the action subject to §108(a)(2) of the Bankruptcy Code, and because he filed the Complaint on August 19, 2022, within the two-year period after the Debtor's bankruptcy filing on August 21, 2020, his claim is not time barred.

The Defendant's arguments are without merit. Section 3306(b) provides in relevant part:

> (b) Limitation. A claim for relief with respect to a fraudulent transfer or obligation under this subchapter is extinguished unless action is brought—
>
> (1) under section 3304(b)(1)(A) within 6 years after the transfer was made or the obligation was incurred or, if later, within 2 years after the transfer or obligation was or could reasonably have been discovered by the claimant;
>
> (2) under subsection (a)(1) or (b)(1)(B) of section 3304 within 6 years after the transfer was made or the obligation was incurred….

28 U.S.C. §3306(b). Section 108(a) of the Bankruptcy Code further provides:

> (a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) two years after the order for relief.

11 U.S.C.A. § 108. Section 108 extends the statute of limitations a further two years. *Cantor v. Perelman*, 414 F.3d 430, 440 (3d Cir. 2005) ("Under 11 U.S.C. § 108(a), when a debtor files a bankruptcy petition, the statute of limitations for all claims not then barred is extended for two years."). The Trustee may reach back as far as August 21, 2014, based upon 11 U.S.C. § 108(a) and the six-year statute of limitations.[6]

Based upon the foregoing, Count I survives and the Motion to Dismiss must be denied as to Count I of the Amended Complaint.

### B.    Counts II and III – The Constructive Fraud Counts

---

[6] The Trustee also notes that he could have brought the avoidance action under 26 U.S.C. § 6901(a)(1)(A) which allows for the avoidance of transfers by a taxpayer who has income tax liability. This statute has a ten-year look back period for fraudulent transfers. *See In re Kipnis*, 555 B.R. 877, 880 (Bankr. S.D. Fla. 2016).

Under Count II of the Amended Complaint, the Trustee seeks to avoid the Interest Payment Transfers as fraudulent conveyances under 28 U.S.C. § 3304(a)(1), which provides, in relevant part:

> (a) Debt Arising Before Transfer. —Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made or the obligation is incurred if—
>
> (1)
>
> (A) the debtor makes the transfer or incurs the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and
>
> (B) the debtor is insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation….

*Id.*

Under Count III of the Amended Complaint, the Trustee seeks to avoid the Interest Payment Transfers as fraudulent conveyances under section 3304(b)(1)(B), which states in pertinent part:

> (b) Transfers without regard to date of judgment.
>
> (1) Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation—
>
> * * * *
>
> (B) without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor—
>
> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

28 U.S.C. § 3304(b)(1)(B).

Both of these Counts did not survive the Defendant's motion to dismiss the original Complaint as Judge Papalia felt that the Complaint contained mere bare conclusions regarding equivalent value and did not satisfy the heightened pleading requirements. In response, the Trustee has now alleged in the Amended Complaint:

> 74. Between August 21, 2014 and the Petition Date, the Debtor made transfers directly to Defendant and/or on the Defendant's behalf in the minimum amount of $6,544,565.74 (the "Subject Transfers" or "Six-Year Transfers") with 10% or $654,456.57 of that amount constituting interest payments as a return on the Defendant's loans (the "Interest Payment Transfers"). The Six-Year Transfers are set forth in Exhibit A to this First Amended Complaint.

Amended Complaint at ¶74. As a result, the Trustee is now limiting his claim to just the interest payments above and beyond all other dollar for dollar payments made directly to the Defendant by Debtor. The Trustee is asserting that the Debtor did not receive reasonably equivalent value for the Interest Payment Transfers received by Defendant.

With respect to reasonably equivalent value, the Third Circuit applies a "totality of the circumstances" test to determine whether reasonably equivalent value has been transferred. *In re R.M.L., Inc.*, 92 F.3d 139, 153 (3d Cir. 1996). The circumstances to be considered include, amongst other things, the fair market value received by the debtor, whether the transaction was conducted at arm's length, and the transferee's good faith. *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 213 (3d Cir. 2006). Thus, "the court must engage in a fact-driven comparison between such value and the transfer sought to be avoided to determine 'whether the debtor got roughly the value it gave.'" *Id.* (quoting *In re AmCad Holdings, LLC*, 579 B.R. 33, 41 (Bankr. D. Del. 2017)). The Third Circuit has explained that "a party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'" *In re Charys Holding Co., Inc.*, 443 B.R. 628, 637 (Bankr. D. Del. 2010) (citing *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007)).

Here, the Defendant argues that the documents relied upon by the Trustee in the Amended Complaint demonstrate that the Debtor received more than equivalent value in exchange for the 2016 repayments. Doc. No. 22-1 at 22. According to the Defendant's accounting summary, he loaned the Debtor $7,105,000.00 in 2016 and received payment in the amount of $6,544,565.74; a loss of $560,434.26. Doc. No. 22-1 at 4–5. Defendant asserts this accounting shows that he received nothing beyond the amount he loaned to the Debtor. Because the money received by the Defendant were payments on antecedent debts those payments presumptively constitute reasonably equivalent value. *Id.* at 18–19 (citing *In re Affiliated Physicians & Emp. Master Tr.*, Adv. Pro. No. 22-01177-MBK, 2022 WL 16953555, at *7 (Bankr. D.N.J. Nov. 15, 2022) (quoting *In re Parker Sch. Uniforms*, LLC, Adv. Proc. No. 19-50771-CSS, 2021 WL 4553016, at *7 (Bankr. D. Del. Oct. 5, 2021))). The Defendant also argues Counts II and III should be dismissed because the Defendant loaned the Debtor more money than he was repaid and thus the transfers did not deplete the estate. Doc. No. 25 at 14-15 (citing *In re Chesrown*, 543. B.R. 685, 689 (Bankr. S.D. Fla. 2015)).

The Trustee disputes that the accounting summary is a complete depiction of the financial transactions between the Debtor and the Defendant because, for instance, the first entry on January 11, 2016, is a transfer from the Debtor to the Defendant without any corresponding prior transfers from the Defendant to the Debtor. Doc. No. 24 at 14. The Trustee further asserts that he did not solely rely upon the accounting summary but also relied upon the Debtor's 341 meeting testimony which was contradictory to the information in the accounting summary. The Trustee argues that

13

he needs additional discovery to reconcile any accounting contradictions and that he has adequately plead a lack of reasonably equivalent value.

To the extent that the Defendant is arguing that Counts II and III should be dismissed based on assertions that he either lost money on his transactions with the Debtor or the transactions involved reasonably equivalent value, the court concludes that due to the scant record before it and because substantial questions of fact remain regarding the extent of the financial relationship between the Debtor and the Defendant, dismissal is not appropriate. *See In re Actrade, Fin. Techs. Ltd.*, 337 B.R. 791, 804 (Bankr. S.D.N.Y. 2005) (the question of reasonably equivalent value is fact intensive, and usually cannot be determined on the pleadings). Indeed, Defendant's counsel during oral argument would not even commit to whether the Defendant received the Interest Payment Transfers or to the amount of the alleged interest rate— truly significant facts that must be determined before the court can make a final determination.

Further, the Defendant's argument misses the point. The Trustee seeks only recovery of the Interest Payment Transfers, i.e., the 10 percent return ($654,456.57). Other courts have held that the fictitious profits from a Ponzi scheme are deemed to have been received for less than reasonably equivalent value. *See In re Bernard L. Madoff Inv. Securities LLC*, 458 B.R. 87, 112 (Bankr. S.D.N.Y. 2011). At this stage, the Trustee has sufficiently plead the existence of a Ponzi scheme which brings into doubt the Defendant's claims regarding equivalent value. It is possible that the Defendant may be able to show that he did not receive any profits upon further development of the record and/or that the Trustee may not ultimately prevail, but those are not to be considered for this Motion to Dismiss.

Accepting the well-pleaded allegations in the Amended Complaint as true and viewing them in the light most favorable to the Trustee, the court concludes that the Trustee has sufficiently pled plausible facts and given fair notice of what his claim is and the grounds upon which it rests, allowing the court to draw a reasonable inference that the Defendant is liable. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The court also agrees with the majority view and finds that the Trustee has met the requisite pleading requirements to overcome a Rule 12(b)(6) and Rule 9(b) challenge. Accordingly, the Defendant's Motion to Dismiss as to Counts II and III must be denied.

### C. Good Faith

Defendant also makes several arguments with regard to good faith. First, the Defendant claims that Count I for actual fraud fails because the repayments are not voidable pursuant to 28 U.S.C. §3307(a) where the Defendant took in good faith and reasonably equivalent value or against any transferee. Doc. No. 22-1 at 17. As discussed above, the Defendant believes he has established reasonably equivalent value because he suffered a loss due to his loans to the Debtor. The Defendant argues that the Trustee failed to allege that he had any knowledge of the Debtor's misconduct. *Id.* at 19–20. The Defendant asserts that he legally loaned the Debtor money to facilitate Debtor's gambling activities and that he has never faced any law enforcement investigations or prosecution bases upon his lending relationship with Debtor.

The Trustee counters that good faith and reasonably equivalent value for the transfers are affirmative defenses that should only be considered on a full evidentiary record on either summary judgment or at trial. Doc. No. 24 at 16. Alternately, the Trustee argues that the issue of whether the Defendant was on "inquiry notice" as to the underlying fraudulent scheme is the Defendant's burden, which he has not met.

To determine whether a transferee took in good faith, the court takes an objective approach to determine what the transferee knew or should have known "such that a transferee does not act in good faith when it has sufficient knowledge to place it on inquiry notice of the voidability of the transfer." *In re Hill*, 342 B.R. 183, 203 (Bankr. D.N.J. 2006).

As noted above, the record is incomplete and substantial questions of fact have been raised. The court is completely without any basis to conclude whether the Defendant acted in good faith or to determine the extent of the Defendant's knowledge of the Debtor's financial affairs. *In re Live Well Fin., Inc.*, 652 B.R. 699, 707 (Bankr. D. Del. 2023) ("A complaint will only be dismissed where the defendant's good faith is apparent on the face of the complaint"); *In re Covenant Partners, L.P.*, 531 B.R. 84, 93 (Bankr. E.D. Pa. 2015) (an affirmative defense such as good faith should be raised later than the motion to dismiss stage); *In re Palm Beach Fin. Partners, L.P.*, 488 B.R. 758, 770 n.9 (Bankr. S.D. Fla. 2013) ("an affirmative defense — especially one which turns on a fact-intensive analysis of a party's good faith — is generally not an appropriate basis for dismissal" upon a motion to dismiss); *In re Int'l Mfg. Grp.*, 538 B.R. 22, 33 (Bankr. E.D. Cal. 2015) ("good faith is a question of fact that would ordinarily not be appropriately resolved on a motion to dismiss."); *In re Bernard L. Madoff Inv. Sec. LLC*, 440 B.R. 243, 256 (Bankr. S.D.N.Y. 2010) (quoting *Ortiz v. Guitian Music Bros., Inc.*, No. 07-CIV-3897, 2009 WL 2252107, at *2 (S.D.N.Y. July 28, 2009)) ("Given that a defendant carries the burden of proving an affirmative defense, '[a] motion to dismiss is usually not the appropriate vehicle to raise affirmative defenses.'").

### D.    When did the IRS Become a Triggering Creditor

The Defendant argues that none of the 2016 repayments are recoverable by the Trustee because the IRS's claim against the Debtor for 2016 income did not arise until the end of the 2016 tax year. The Debtor contends that Federal income tax liability cannot arise before the end of the tax year. Doc. 22-1 at 9 (citing *In re Polichuk*, 506 B.R. 405, 427 (Bankr. E.D. Pa. 2014)); Doc 25 at 6 (citing *United States v. Jones*, 877 F. Supp. 907, 914–15 (D.N.J. 1995), *aff'd without op.* 74 F. 3d 1228).[7] The Defendant also argues that the Bankruptcy Code defines a claim as "a right to

---

[7] At oral argument, counsel for the Defendant quoted *Jones* and informed the court that the case was binding Third Circuit authority. *Jones* was affirmed without opinion and, accordingly, is a non-precedential opinion ("NPO") which is not binding upon lower courts. *In re: Grand Jury Investigation, No. 06-1474*, 445 F.3d 266, 276 (3d. Cir. 2006) (reasoning that because the Third Circuit's Internal Operating Procedures do not regard NPOs as precedent binding upon itself, NPOs "are not precedents for the district courts of this circuit"); *In re Boyd*, 401 B.R. 137, 141 (Bankr. D.N.J. 2008) (NPO of the Third Circuit is not precedent for the district courts below). Further, this court also is not bound by the district court's opinion. *In re D'Angelo*, 475 B.R. 424, 439 (Bankr. E.D. Pa. 2012), *aff'd*, 491 B.R. 395 (E.D. Pa. 2013) ("In a multi judge district, bankruptcy courts of that district are not bound by the pronouncements of a single district court judge.") (citations omitted).

payment" and that a right to payment of taxes cannot exist without a corresponding liability for payment. *Id.* at 10 (citing *In re Michaelson*, 200 B.R. 862, 864 (Bankr. D. Minn. 1996)). The Defendant also relies upon *In re Affirmative Holdings, Inc.*, 620 B.R. 73 (D. Del. 2020), which held that income tax is "incurred" for purposes of section 503(b)(1)(B) at the close of the tax year because it is only at that time that all income, expenses, and deductions that could determine tax liability have occurred. The Defendant cites cases for the proposition that even when a taxpayer is required to make installment or estimated tax payments, no tax liability exists until the end of the tax year. Doc. No. 25 at 4-7 (citing *In re Dixon*, 218 B.R. 150 (B.A.P. 10th Cir. 1998); *In re Michaelson*; *In re Nation*, No. 12–81648–TRC, 2014 WL 347048, at *1 n.2 (Bankr. E.D. Okla. Jan. 30, 2014)). Accordingly, the Defendant argues that because the IRS did not have a claim against the Debtor for 2016 income taxes before its right to payment arose under the Internal Revenue Code, and any 2016 tax liability did not arise until after each of the 2016 repayments were made to Defendant, the court must dismiss the entire Amended Complaint or, at a minimum, Count II, 28 U.S.C. § 3304(a)(1).

The Trustee makes several initial arguments before addressing the substance of the Defendant's argument. First, the Trustee argues that because Judge Papalia in his oral opinion already rejected this argument, the law of the case and collateral estoppel precludes the Defendant from raising this issue again. While it is true that Judge Papalia rejected the Defendant's arguments that the IRS's claim did not arise until end of the tax year, he did leave the door open to further briefing. Based on this, the court will not apply either the law of the case or collateral estoppel to this issue.

Second, the Trustee argues that the issue of when the IRS became a triggering creditor is only applicable to Count II. The Trustee notes that language of 28 U.S.C. § 3304(b)(1)(A) which provides:

> a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, **whether such debt arises before or after the transfer is made or the obligation is incurred**…

means that an analysis is not necessary to determine when the IRS became a triggering creditor for purposes of Count I. Further, the same is true for Count III because 28 U.S.C. § 3304(b)(1)(B) contains the same language. Doc. No. 24 at 7-8 (emphasis in original).

With regard to Count II, the Trustee cites to *Hawk v. Commissioner*, Nos. 30024-09, 30025-09, 30026-09, 30515-09, T.C. Memo. 2017-217, at *57-58 (T.C. Nov. 6, 2017), which states that "the Commissioner becomes a creditor for Federal income tax liabilities when taxable gain is realized." Doc. No. 24 at 8–9. The Trustee also relies upon *In re White*, 168 B.R. 825, 833 (Bankr. D.Conn. 1994), for the premise that "[j]ust as a creditor need not hold a judgment in order to be entitled to assert a claim in bankruptcy, [] the Service need not have made an assessment in order to assert that it has a 'claim,' i.e., a 'right to payment.'"

In *In re White*, the District Court of Connecticut rejected the debtor's argument that he did not have any tax liability for years when the taxes were not assessed. *Id.* at 831; *see also Stang v.*

*IRS*, 788 F.2d 564, 565-66 (9th Cir. 1986) (finding that the "IRS may assess the tax liability of individuals who fail to file a return 'at any time.'"). Moreover, the court in *White* reasoned that the IRS's "failure to assess" does not relieve a debtor from liability. "An assessment is an administrative determination that a certain amount is currently due and owing as a tax. It makes the taxpayer a debtor in much the same way as would a judgment. *Id.* (quoting *Rambo v. United States*, 492 F.2d 1060, 1061 n.1 (6th Cir. 1974)).

While the Defendant and the Trustee have each cited case law that is supportive of their positions, it is clear after surveying the case law that courts are conflicted regarding this issue. *See In the Matter of O.P.M. Leasing Servs., Inc.*, 68 B.R. 979, 983–85 (Bankr. S.D.N.Y. 1987) (any tax liability on income earned by the pre-petition debtor is not entitled to administrative expense priority); *cf. In re Pacific-Atlantic Trading Co.*, 64 F.3d 1292, 1301 (9th Cir. 1995) ("tax on income should be treated as 'incurred' on the last day of the taxable period"); *In re Affirmative Holdings, Inc.*, 620 B.R. 73 (holding that for purposes of 11 U.S.C. § 503(b)(1)(B) corporate income tax liability is incurred when it accrues and becomes a fixed liability at the close of the tax year).

For purposes of determining whether the IRS was a present creditor of the Debtor prior to December 31, 2016, this court rejects any conclusion that the Debtor's tax liability was required to "fixed" for the IRS to have a claim against the Debtor under the Bankruptcy Code.

The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). The Bankruptcy Code's definition of "claim" provides:

(5) The term "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured….

11 U.S.C. §101(5)(A); *see also Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) ("right to payment" under Section 101(5)(A) "means nothing more nor less than an enforceable obligation"); *In re Cowin*, 864 F.3d 344, 352 (5th Cir. 2017) (other citations omitted) ("The concept of a claim is broad, and it includes 'all legal obligations of the debtor, no matter how remote or contingent . . . [that will] be dealt with in the bankruptcy case.'").

The term "incur" "means 'to suffer or bring on oneself (a liability or expense).' BLACK'S LAW DICTIONARY 885 (10th ed. 2014); *accord* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (UNABRIDGED) 1146 (1981)." *In re Al-Akwaa*, 585 B.R. 82, 86 (Bankr. S.D.N.Y. 2018). In *In re Verso Corp.*, 806 F. App'x 130, 133 (3d Cir. 2020), the Third Circuit recently discussed the definition of claim, noting:

We interpret the word "claim" with "the broadest available definition," *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302, 123 S. Ct. 832, 154 L. Ed. 2d 863 (2003) (quoting *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S. Ct. 2150, 115 L. Ed. 2d 66 (1991)), reflecting Congress's "unambiguous[] . . . intent to address

17

all possible legal obligations in defining a bankruptcy claim," *Kilbarr Corp. v. Gen. Servs. Admin., Office of Fed. Supply & Servs. (In re Remington Rand Corp.)*, 836 F.2d 825, 829 (3d Cir. 1988). "[O]ur focus should not be on when the claim accrues . . . but whether a claim exists." *In re Rodriguez*, 629 F.3d 136, 142 (3d Cir. 2010) (citation omitted). Indeed, "a claim can exist under the [Bankruptcy] Code before a right to payment exists under state law." *Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 121 (3d Cir. 2010) (en banc) (internal quotation marks omitted).

*Id.*

This court concludes that the Debtor's income tax liability existed and the IRS had a claim when the Debtor realized a taxable gain. *Hawk*, T.C. Memo. 2017-217 at *57–58. A taxpayer owes taxes on realized gain. The Debtor's tax liability did not become fixed until the close of the tax year because that liability may be reduced or eliminated at the end of the year by deductions or offsets. The ability to reduce or offset a gain doesn't mean the gain and corresponding IRS tax claim never existed. To require that a tax liability be "fixed" ignores the statutory definition of "claim" that specifically encompasses debts that are not fixed.

For example, a gambler wins a Texas Hold'em tournament realizing a $10,000.00 gain. This triggering event gives the IRS an unliquidated claim/debt that became fixed or liquidated at the close of the tax year after the gambler claims any deduction on his gambling losses up to the amount of his gambling winnings. The Amended Complaint alleges the Debtor gambled throughout 2016. At some point, the Debtor realized a taxable gain from gambling, triggering the IRS's unliquidated tax claim and thus allowing the Trustee to reach the 2016 payments. *In re Rodriguez*, 629 F.3d 136, 142 (3d Cir. 2010) ("the contingent nature of the right to payment does not change the fact that the right to payment exists, even if it is remote, and thereby constitutes a "claim" for purposes of § 101(5)"); *Kilen v. United States*, 129 B.R. 538, 547-49 (Bankr. N.D. Ill. 1991) (IRS held a claim in bankruptcy although it had not determined the amount or whether liability would be assessed).

## CONCLUSION

When considering the motion to dismiss here, the court must accept all the factual allegations contained within the complaint as true, *United States v. Gaubert*, 499 U.S. 315, 327 (1991); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and all reasonable inferences should be drawn in favor of the Trustee. *Gary v. Air Group, Inc.*, 397 F.3d 183, 186 (3d Cir. 2005). The Amended Complaint survives the Defendant's motion to dismiss as it "contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The court can draw a reasonable inference that the Defendant here is liable for the misconduct alleged by the Trustee. Whether the Trustee will ultimately prevail is a question for another day. But whether the Trustee, because he has made plausible allegations, is entitled to offer evidence to support the claims." *Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1017 (D. Idaho 2010). Accordingly, based upon the findings of facts and conclusions of law set forth above, the Defendant's Motion to Dismiss is hereby denied.

An appropriate judgment has been entered consistent with this decision.

The court reserves the right to revise its findings of fact and conclusions of law.

Dated: November 20, 2023
/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge